Nos. 24-560 and 24-757

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

**OKSANA B., ALEXANDER B., and A.B.,**

*Plaintiffs-Appellees,*

v.

**PREMERA BLUE CROSS, TABLEAU SOFTWARE, INC.
EMPLOYEE BENEFIT PLAN, and SALESFORCE.COM HEALTH
AND WELFARE PLAN,**

*Defendants-Appellants.*

---

United States District Court for the Western District of Washington
Honorable Marsha J. Pechman
Case No. 2:22-cv-01517-MJP

---

**REPLY BRIEF**

---

ADAM H. CHARNES
KILPATRICK TOWNSEND &
  STOCKTON LLP
2001 Ross Avenue, Suite 4400
Dallas, TX 75201
(214) 922-7106
acharnes@ktslaw.com

GWENDOLYN C. PAYTON
JOHN R. NEELEMAN
KILPATRICK TOWNSEND &
  STOCKTON LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600
gpayton@ktslaw.com
jneeleman@ktslaw.com

*Counsel for Premera Blue Cross, Tableau Software, Inc. Employee
Benefit Plan, and Salesforce.com Health and Welfare Plan*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................i

TABLE OF AUTHORITIES ......................................................ii

INTRODUCTION ................................................................1

ARGUMENT ....................................................................1

I.    The Members misstate and then ignore the standard of review. ....................................................................1

II.   Premera does not rely on "abandoned" or post-hoc rationales. ..................................................................4

III.  Premera's medical necessity determination regarding Catalyst was not an abuse of discretion. ......................10

IV.  Premera's interpretation of the wilderness exception was not an abuse of discretion. ...........................................15

V.   The Members waived any argument that Premera failed to adequately explain the denial of their Second Nature and Catalyst claims.........................................................19

VI.  Plaintiffs have not shown that they are clearly entitled to benefits and therefore the district court's award of benefits was improper. .................................................20

VII. The Court should reverse or vacate the attorneys' fee award. .......................................................................23

CONCLUSION ..................................................................23

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Alvarez v. Lynch,*
　828 F.3d 288 (4th Cir. 2016) ......................................................... 20

*Am. Title Ins. Co. v. Lacelaw Corp.,*
　861 F.2d 224 (9th Cir. 1988) ......................................................... 18

*Beazer E., Inc. v. Mead Corp.,*
　412 F.3d 429 (3d Cir. 2005) .......................................................... 20

*BillFloat Inc. v. Collins Cash Inc.,*
　105 F.4th 1269 (9th Cir. 2024) ....................................................... 5

*Black v. Long Term Disability Ins.,*
　582 F.3d 738 (7th Cir. 2009) ......................................................... 14

*Chappel v. Lab'y Corp. of Am.,*
　232 F.3d 719 (9th Cir. 2000) ......................................................... 15

*Citizens for Appropriate Rural Rds. v. Foxx,*
　815 F.3d 1068 (7th Cir. 2016) ....................................................... 20

*Concrete Pipe & Prods., Inc. v. Constr. Laborers Pension Tr.,*
　508 U.S. 602 (1993)), *overruled on other grounds by*
　*Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir.
　1999) ....................................................................................... 3

*Day v. AT&T Disability Income Plan,*
　698 F.3d 1091 (9th Cir. 2012) ........................................................ 2

*DeFries v. Union Pac. R.R. Co.,*
　104 F.4th 1091 (9th Cir. 2024) ...................................................... 23

*Demer v. IBM Corp. LTD Plan,*
　835 F.3d 893 (9th Cir. 2016) ......................................................... 20

*Dwyer v. United Healthcare Insurance Co.*,
115 F.4th 640 (5th Cir. 2024)........................................................11, 12

*E.W. v. Health Net Life Insurance Co.*,
86 F.4th 1265 (10th Cir. 2023).........................................................6, 7

*Est. of Shockley v. Alyeska Pipeline Serv. Co.*,
130 F.3d 403 (9th Cir. 1997) ...............................................................2

*Gallo v. Amoco Corp.*,
102 F.3d 918 (7th Cir. 1996) .........................................................15, 21

*Hakopian v. Mukasey*,
551 F.3d 843 (9th Cir. 2008) .............................................................18

*Hernandez v. Garland*,
47 F.4th 908 (9th Cir. 2022)..............................................................12

*Howard W. v. Providence Health Plan*,
652 F. Supp. 3d 1293 (W.D. Wash. 2023), *appeal
dismissed*, No. 23-35143, 2023 WL 5528634 (9th Cir. June
21, 2023) ............................................................................................15

*M. S. v. Premera Blue Cross*,
118 F.4th 1248 (10th Cir. 2024)........................................................21

*Murthy v. Missouri*,
144 S. Ct. 1972 (2024) ........................................................................5

*Pakootas v. Teck Cominco Metals, LTD.*,
830 F.3d 975 (9th Cir. 2016) ............................................................12

*Robertson v. Blue Cross & Blue Shield of Texas, Inc.*,
612 F. App'x 478 (9th Cir. 2015)..................................................16, 17

*Silver v. Exec. Car Leasing Long-Term Disability Plan*, 466
F.3d 727 (9th Cir. 2006) .....................................................................3

*Snow v. Standard Ins. Co.*,
87 F.3d 327 (9th Cir. 1996) ............................................................3, 4

*Stephan v. Unum Life Ins. Co. of Am.*,
    697 F.3d 917 (9th Cir. 2012) ........................................................ 17

*Todd R. v. Premera Blue Cross Blue Shield of Alaska*,
    825 F. App'x 440 (9th Cir. 2020) ............................................. 18, 19

*Tremain v. Bell Indus., Inc.*,
    196 F.3d 970 (9th Cir. 1999) ........................................................ 2

*United States v. Guillen-Cruz*,
    853 F.3d 768 (5th Cir. 2017) ...................................................... 20

*United States v. Sineneng-Smith*,
    590 U.S. 371 (2020) ................................................................. 18, 19

*Wit v. United Behav. Health*,
    79 F.4th 1068 (9th Cir. 2023) .................................................... 22

*Wolf v. Life Ins. Co. of N. Am.*,
    46 F.4th 979 (9th Cir. 2022) ........................................................ 2

## Rules and Regulations

29 C.F.R. §
    2560.503-1(g)(1)(v)(A) ................................................................ 7
    2560.503-1(h)(2)(iv) .................................................................... 6
    2590.712(c)(4)(iii) ....................................................................... 7

Circuit Rule 32-1(a) ......................................................................... 12

Fed. R. App. P. 28(j) ................................................................. 11, 12

## INTRODUCTION

The Members devote a remarkable 51 pages of their 66-page brief summarizing their interpretation of the facts and, in painstaking detail, their administrative submissions, but their nine-page argument only superficially responds to Premera's arguments. The Members completely fail to defend several of the district court's holdings—for instance, they never mention the district court's conclusions that Premera inadequately explained its reasons for rejecting the Second Nature and Catalyst claims. Their discussion of the remaining issues is perfunctory, largely ignoring—rather than responding to—Appellants' arguments. In the end, nothing in the Members' brief justifies the district court's decision.

## ARGUMENT

### I.  The Members misstate and then ignore the standard of review.

The Members contend that this Court reviews the district court's factual determinations only for clear error. Members Br. 56.[1] That is wrong. Where, as in this case, the district court applied the abuse of discretion standard, this Court reviews *de novo* the district court's

---

[1] This brief cites the Members' appellee brief as "Members Br." and the Appellants' opening brief as "App. Br."

review of Premera's decision under the abuse of discretion standard.

*Wolf v. Life Ins. Co. of N. Am.*, 46 F.4th 979, 984 (9th Cir. 2022). The

district court reviewed Premera's factual findings only for clear error.

*Day v. AT&T Disability Income Plan*, 698 F.3d 1091, 1096 (9th Cir.

2012) ("ERISA plan administrators abuse their discretion if they …

rel[y] on clearly erroneous findings of fact.") (brackets in the original)

(internal quotation marks omitted). In reviewing that decision, this

Court "employ[s] the same standard that governed the district court's

review of the plan administrator's decision." *Wolf*, 46 F.4th at 984.[2] This

Court, therefore, does not defer to the district court's factual

determinations, but instead—just like the district court was supposed

to do—reviews Premera's factfinding for clear error. Any other standard

would insulate from effective review the district court's failure to defer

appropriately to Premera under the abuse of discretion standard.

---

[2] *See also Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 975 (9th Cir. 1999)
("review[ing] de novo the district court's … application of the standard
of review"); *Est. of Shockley v. Alyeska Pipeline Serv. Co.*, 130 F.3d 403,
405 (9th Cir. 1997) ("review[ing] the district court's summary judgment
de novo," and "review[ing] the decision of the retirement committee for
abuse of discretion" where "the benefit plan gives the administrator
such authority").

To be sure, when "a district court has conducted a *de novo* review of an ERISA plan administrator's decision," this Court "review[s] the court's factual findings only to determine whether they are 'clearly erroneous.'" *Silver v. Exec. Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 732–33 (9th Cir. 2006). But here the district court applied the abuse of discretion standard, so this Court does not review the district court's order for clear error.

While this Court reviews *Premera's* decision for clear error, the Members never acknowledge just what review for clear error entails. "[R]eview under the 'clearly erroneous' standard is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed.'" *Snow v. Standard Ins. Co.*, 87 F.3d 327, 331 (9th Cir. 1996) (quoting *Concrete Pipe & Prods., Inc. v. Constr. Laborers Pension Tr.*, 508 U.S. 602, 623 (1993)), *overruled on other grounds by Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999). "The mere fact that the plan administrator's decision is directly contrary to some evidence in the record does not show that the decision is clearly erroneous." *Id*. "That standard certainly does not permit the overturning of a decision … where there is 'relevant evidence [that] reasonable minds might

3

accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence.'" *Id.* (brackets in the original). The Members' brief simply fails to apply this standard. Indeed, the Members' argument reads as if this Court reviews Premera's decision *de novo*.

In any event, there are no material disputed facts in this appeal. The contents of the administrative record are undisputed. The only contested fact appears to be whether Second Nature is a wilderness program, which the Members try to dispute. But, as explained below, in the district court they never challenged Premera's determination, and here they have failed to demonstrate clear error by Premera.

## II. Premera does not rely on "abandoned" or post-hoc rationales.

The Members devote about a third of their short argument section to contending that Premera improperly relied on abandoned or post-hoc rationales. Members Br. 57–60. But from their brief it is not possible to figure out which arguments they contend Premera never asserted during the administrative process. The Members never identify even *one* specific rationale asserted by Premera in its brief that they contend was "never communicated in Premera's denial letters." *Id.* at 58.

4

Instead, the Members simply cite Appellants' brief "generally" and then ask this Court to "compare[]" the letters Premera sent them during the administrative appeals. *Id.* This is improper. Because the Members "failed to 'specifically and distinctly argue[]' this point" in their brief, it is waived. *BillFloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269, 1276 n.3 (9th Cir. 2024). If the Members wanted to argue that Premera improperly relied on post-hoc arguments, they should have identified those specific arguments in their brief, rather than force the Court to identify those arguments for itself. After all, "[j]udges are not like pigs, hunting for truffles buried [in the record]." *Murthy v. Missouri*, 144 S. Ct. 1972, 1991 n.7 (2024) (brackets in the original).

The Members appear to contend that Premera "abandoned" the argument that Catalyst did not "me[e]t the requirements for coverage." Members Br. 59. As explained in the opening brief, Premera informed Plaintiffs during the administrative process that Catalyst did not comply with basic patient-protection requirements for coverage applicable to *all* residential treatment facilities—such as performing a psychiatric evaluation within one business day of admittance and subsequent psychiatric evaluations once per week. App. Br. 40–41.

Premera clearly articulated this rationale for denying the claim in its first communication to the Members, *who never addressed it during the administrative appeals. Id.* at 42–43. The Members' brief never disputes any of these facts—not Premera's conclusion that Catalyst did not satisfy these patient-protection standards, not Premera's initial communication of this basis for denial, and not the Members' failure to address this in any of their appeal submissions. Members Br. 58–60. The Members baldly assert that they "challenged" this basis for denial subsequently, *id.* at 59–60, but they cite no part of their appeal submissions that even references the standards.[3]

As the opening brief explained, because the Members did not dispute this basis for denial, Premera was not required to repeat it in addressing their appeals. App. Br. 42–44. The Members cite no authority contradicting Premera's argument, nor do they address the fact that the ERISA regulations required Premera to address only contentions "submitted by the claimant." 29 C.F.R. § 2560.503-1(h)(2)(iv). The Members contend that Appellants "read … too broadly"

---

[3] The only part of the record that the Members cite in support of this assertion is the district court's opinion, which itself never made this assertion. Members Br. 60 (citing 1-ER-37).

the Tenth Circuit's decision in *E.W. v. Health Net Life Insurance Co.*, 86 F.4th 1265 (10th Cir. 2023). Members Br. 59. But they agree that *E.W.* holds that the administrator need not address "an argument that the claimants 'failed to raise,'" *id.*—which is the precise situation here.

Instead of showing where their administrative appeals argued that Catalyst *did* provide the requisite services—and thereby responded to the basis for Premera's denial—the Members contend that they preserved *that* argument by making a *different* one: that Premera could not apply the InterQual Criteria at all because they were "undisclosed external requirements." Members Br. 59. That argument triply fails. *First*, the Members never explain how they preserved an argument that Catalyst provided enough services to satisfy the InterQual Criteria by instead arguing that Premera could not apply those Criteria at all. *Second,* the argument they did advance is frivolous. The SPD itself expressly discloses that Premera relies on external guidelines, *see* App. Br. 11–12, and federal regulations expressly contemplate reliance on such guidelines, *see* 29 C.F.R. § 2560.503-1(g)(1)(v)(A); *id.* § 2590.712(c)(4)(iii). The use of detailed guidelines is a matter of necessity: the SPD contains only general medical-necessity criteria, not

7

specific guidance for residential treatment; the InterQual Criteria include detailed criteria for residential treatment, *see* 4-ER-452–456. And courts regularly cite the InterQual Criteria as authoritative and consistent with medical necessity definitions substantively the same as Premera's. *See* App. Br. 39–40. *Third*, likely because the argument is frivolous, the Members do not make it on appeal.

The Members also advance an argument that makes no sense: that asserting this rationale in the initial denial, but not in responding to subsequent administrative appeals on different grounds, "prevent[ed] claimants from addressing [the rationale] before litigation." Members Br. 58. Because Premera articulated Catalyst's failure to comply with the mandatory, patient-protection requirements for residential treatment *before* the Members' administrative appeals, they possessed the full and complete ability to address the issue. But they never did. That failure was *the Members'* fault, not Premera's. Moreover, since the Members did not contest that Catalyst failed to meet the Plan's medical necessity requirements, there was nothing for Premera to address in the appeals.

Finally, lost in the Members' justifications and excuses is the importance of the requirements that Catalyst failed to satisfy. The InterQual Criteria based these requirements on best medical practice. "InterQual@ criteria are derived from the systematic, continuous review and critical appraisal of the most current evidence-based literature," including "a comprehensive literature review of the clinical evidence." 4-ER-429. This systematic review determined that, when a child is separated from his family, friends, and community in residential treatment, he should be immediately evaluated by a psychiatrist and then again on a weekly basis, receive therapy three times per week, and receive a clinical assessment daily (among other requirements). 4-ER-509–510. These evaluations *protect* the child—by ensuring that residential treatment continues to be appropriate and that, while confined, he receives the correct therapy and medication. It is undisputed that Catalyst utterly failed to provide care consistent with the medical standard of practice. For example, rather than 50-some psychiatric evaluations, A.B. received (at most) 12; he did not receive the required three therapy sessions per week; and he was not clinically assessed once each day. These significant failings mean that the care

Catalyst provided did not come close to meeting the medical standard of care. And, as a result, the substandard treatment A.B. received at Catalyst was not eligible for coverage under the SPD.

## III. Premera's medical necessity determination regarding Catalyst was not an abuse of discretion.

In their opening brief, Appellants demonstrated that Premera did not abuse its discretion in concluding that A.B. could be treated at a lower level of care. Specifically, Premera found that A.B. did not exhibit the required symptoms warranting residential treatment and that his home circumstances allowed him to be safely managed there. App. Br. 46–50. Appellants also explained why Premera did not abuse its discretion simply because it did not follow the recommendations of Glissmeyer and Wood, and why covering Catalyst for the first 30 days did not obligate Premera to cover the next year. *Id.* at 50–53.

The Members ignore most of those arguments. Their brief also reads as if this Court reviews Premera's decision *de novo*, never acknowledging or applying the abuse of discretion standard. The few arguments they bother to advance are meritless.

First, the Members contend that Premera failed "to cite to medical evidence in its denials." Members Br. 63. But that is plainly incorrect.

10

As Appellants' brief described in detail, in both internal administrative appeals and the IRO appeal, the reviewers cited specific medical evidence in explaining that A.B. could be treated safely and effectively at a lower level of care. *See* App. Br. 18–20. For example, the Level 1 appeal listed A.B.'s diagnoses and noted that the medical records showed that he was not homicidal, suicidal, or gravely impaired for self-care, was not self-harming or hallucinating, was compliant with therapy, and had family support at home. *Id.* at 18 (quoting 3-ER-339). The Members never explain what *additional* medical evidence they contend Premera should have cited. And, as this evidence shows, Premera did not "complete[ly] disregard[]" the Members' evidence "without so much as an explanation." Members Br. 65 (first brackets in the original). Premera explained precisely why residential treatment was not appropriate.

The Members' brief—and, puzzlingly, also their Rule 28(j) letter[4]—seek to rely on *Dwyer v. United Healthcare Insurance Co.*, 115

---

[4] The Fifth Circuit decided *Dwyer* on September 19, 2024, and it was cited in the Members' brief filed on October 7, 2024. Members Br. 65. The Members then filed a Rule 28(j) letter on October 23, 2024, submitting *Dwyer*. The Court should strike their Rule 28(j) letter. That provision applies only to "pertinent and significant authorities that

F.4th 640 (5th Cir. 2024). But *Dwyer* reversed the plan administrator because its denial letters "*contradicted*" objective medical facts in the record. *Id.* at 648–49 (emphasis in the original). For example, the denial letter stated that the patient had "achieved 100% of your ideal body weight" when the plan administrator's own files demonstrated that this was not true. *Id.* at 648. Other statements relied on by the administrator were irrelevant to the appropriate level of care. *Id.* at 648–49. In contrast to *Dwyer*, the Members here dispute medical *opinions* regarding the proper level of treatment offered by Premera's reviewers—not the objective facts on which they relied.

The Members also vaguely allude to the fact that Premera covered the first month at Catalyst. Members Br. 63. But their brief contains no discernible argument, so any contention that Premera was bound by

---

come to a party's attention *after the party's brief has been filed*." Fed. R. App. P. 28(j) (emphasis added). Since the Members cited *Dwyer* in their brief, it obviously came to their attention *before* they filed their brief. This violation of Rule 28(j) is especially egregious because the Members' brief contained 13,977 words, and their 28(j) letter contained another 338 words—so they improperly used the 28(j) letter to exceed the word limitation on their brief. *See* Circuit Rule 32-1(a) (limiting principal briefs to 14,000 words). Finally, any argument about *Dwyer* first presented in their 28(j) letter is also waived. *See Pakootas v. Teck Cominco Metals, LTD.*, 830 F.3d 975, 986 n.12 (9th Cir. 2016) ("Arguments raised for the first time in 28(j) letters are ordinarily considered waived.").

that one month of coverage is waived. *See Hernandez v. Garland*, 47 F.4th 908, 916 (9th Cir. 2022) (holding that a party waived an argument by mentioning it but not "'coherently develop[ing]' the argument") (brackets in the original). In any event, the Members never rebut Appellants' explanation why any such argument is erroneous. App. Br. 44–45, 52–53. For example, Appellants noted that no case supports the district court's holding (*id.* at 52–53); the Members cite none. Appellants explained the perverse incentives that any estoppel rule would create (*id.* at 45); the Members never address those incentives.

The Members further demand that the Court give "greater weight" to A.B.'s treating physicians than "Premera's reviewers." Members Br. 63–64. But the Members never explain *why* ERISA requires (or permits) this, and they never respond to, let alone rebut, Appellants' demonstration that the law contradicts this assertion. App. Br. 51–52. Indeed, the Supreme Court rejected this precise argument. *Id.*

The Members baldly assert that A.B.'s "persistent drug use and cannabis and alcohol use disorders" warranted residential treatment. Members Br. 64. Those are serious medical conditions that warrant

treatment. But the question in this appeal is whether Premera abused its discretion in holding that they did not require this level of care, residential treatment, under the SPD and the InterQual Criteria in A.B.'s particular circumstances. The Members cite no provision of the SPD and no provision of the InterQual Criteria that supports their contention that A.B.'s situation required residential treatment. Nor do they ever explain why Premera's conclusion that it did not constitutes an abuse of discretion.

In the end, the Members' brief merely presses their opinion that residential treatment was required without reference to the actual standards. But their disagreement with Premera's judgment—even if A.B.'s therapists had disagreed with that judgment[5]—does not justify reversal. So long as Premera's "choice between competing medical opinions … is rationally supported by record evidence," it did not abuse its discretion. *Black v. Long Term Disability Ins.*, 582 F.3d 738, 745 (7th Cir. 2009). Nothing in the Members' brief demonstrates that Premera's choice was not "rationally supported by record evidence."

---

[5] Of course, A.B.'s therapists never opined that he could not be treated in a less-intensive level of care.

14

## IV. Premera's interpretation of the wilderness exception was not an abuse of discretion.

The Members contend that the SPD's exclusion of coverage for wilderness therapy does not apply. They are wrong.

The Members' claim for coverage at Second Nature "is governed by the contractual terms of the benefits plan." *Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 724 (9th Cir. 2000). Here, the SPD specifically excludes "recreational, camp and activity-based programs," 3-ER-396, and explains that "[t]he Mental Health Care benefit doesn't cover: … Outward bound, *wilderness*, camping or tall ship programs or activities." 3-ER-375 (emphasis added). Second Nature repeatedly refers to itself as a wilderness program. App. Br. 6 (citing the record). Premera denied the Members' claim precisely on this basis—in the initial denial and in both administrative appeals.[6] *Id.* at 15–16. Nothing in the

---

[6] The Members do not defend the district court's holding that Premera failed adequately to explain the denial of the Second Nature claim. *See infra*, pp. 19–20. Nor could they: Premera expressly said that the wilderness exclusion applied to the claim, and that represented adequate explanation. "So long as the plan participant is provided a sufficient explanation to formulate further challenges to the denial, it is not necessary for an administrator to provide 'the reasoning behind the reasons.'" *Howard W. v. Providence Health Plan*, 652 F. Supp. 3d 1293, 1311 (W.D. Wash. 2023), *appeal dismissed*, No. 23-35143, 2023 WL 5528634 (9th Cir. June 21, 2023) (ultimately quoting *Gallo v. Amoco*

district court opinion or the Members' brief establishes that Premera's determination that Second Nature was a wilderness program constituted clear error. Irrespective of whether a wilderness program provides adequate care and was medically warranted, it is not covered if excluded by the SPD.

The district court held that the exclusion applied only to programs that offered "recreational activities" and no "therapy"—and A.B. received some therapy at Second Nature. 1-ER-30. But, as Appellants explained in their opening brief, that is not what the exclusion says: it categorically denies coverage for "wilderness … programs or activities." This exclusion applies irrespective of whether such programs also provide therapy. As Premera explained to the Members, 3-ER-323, Premera would cover any therapy by a qualified provider while at Second Nature, but A.B.'s stay at the wilderness program—his room, board, and tuition—is categorically not covered, full stop. That is how exclusions work: as this Court explained in *Robertson v. Blue Cross & Blue Shield of Texas, Inc.*, 612 F. App'x 478 (9th Cir. 2015), a plan

*Corp.*, 102 F.3d 918, 922 (7th Cir. 1996)).

exclusion denies coverage even if the treatment would otherwise be medically necessary. *Id.* at 479; *see* App. Br. 29–33.

The Members briefly defend the district court's reasoning, contending (without explanation) that the exclusion was "undefined." But they—and the district court—completely ignore the standard of review. The legal question is whether Premera's interpretation of the exclusion was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012). The Members never even attempt to make such a showing. And they *cannot* make that showing, since Second Nature refers to itself as a wilderness program.

The Members contend that they "disputed the applicability of the exclusion" by providing "evidence that Second Nature was not merely a 'wilderness' program or recreational camp." Members Br. 61. That assertion is not true. In the administrative appeals and before the district court, the Members never disputed that Second Nature was a wilderness program. Their own complaint referred to it as a "wilderness program[]." 2-ER-113. And the Members' motion for judgment

17

repeatedly referred to it as a wilderness program. 2-ER-82; 2-ER-84.
"Allegations in a complaint are considered judicial admissions."
*Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008) (citing *Am.
Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)). Even
if those characterizations did not bind the Members, they certainly
confirm the reasonableness of Premera's determination that Second
Nature fell within the wilderness program exclusion. And because
Premera's interpretation of its own SPD was reasonable, it did not
abuse its discretion.

Notably, the Members never advanced the rationale adopted by
the district court. In their motion for judgment, with respect to Second
Nature they argued only that the wilderness exclusion violated the
Parity Act—not that it did not apply to A.B. because he received some
therapy there. "The district court crafted that theory sua sponte." *Todd
R. v. Premera Blue Cross Blue Shield of Alaska*, 825 F. App'x 440, 441
(9th Cir. 2020). And doing so was error, as it violated "the principle of
party presentation." *Id.* Courts "rely on the parties to frame the issues
for decision and assign to courts the role of neutral arbiter of matters
the parties present." *United States v. Sineneng-Smith*, 590 U.S. 371,

375 (2020). Accordingly, courts "normally decide only questions presented by the parties." *Id.* at 376. "[C]ourts must presume 'that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.'" *Todd R.*, 825 F. App'x at 442 (quoting *Sineneng-Smith*, 140 S. Ct. at 1579). And as this Court has noted, applying the doctrine in the very same context as this case, "[t]hat presumption naturally applies all the more in a case such as this, involving a specialized area of civil law and competent, highly experienced counsel on both sides." *Id.*

## V. The Members waived any argument that Premera failed to adequately explain the denial of their Second Nature and Catalyst claims.

The district court held that Premera failed to provide a reasoned explanation for the denial of the Second Nature and Catalyst claims. In their brief, Appellants explained why the district court erred. App. Br. 26–29, 34–38. The Members' brief, however, never addresses Appellants' arguments regarding the district court's holdings. By failing to respond to Appellants' arguments, the Members have waived any defense of the district court's holdings, functionally conceding the

19

district court's error. *See Citizens for Appropriate Rural Rds. v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016) ("Failure to respond to an argument … results in waiver."); *Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016) ("an outright failure to join in the adversarial process would ordinarily result in waiver"); *United States v. Guillen-Cruz*, 853 F.3d 768, 777 (5th Cir. 2017) ("Parties are required to brief their contentions to preserve them."); *Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 437 n.11 (3d Cir. 2005) ("[T]he appellee 'waives, as a practical matter anyway, any objections not obvious to the court to specific points urged by the [appellant].'") (second brackets in the original).

## VI.  Plaintiffs have not shown that they are clearly entitled to benefits and therefore the district court's award of benefits was improper.

Proving procedural irregularities, like a failure to adequately explain a denial, does not entitle the claimant to relief. To obtain any relief for alleged procedural irregularities, the Members must show they would be entitled to the benefit they claim once the procedural irregularity is cured. An award of benefits—such as the district court issued here—is appropriate only if the record "clearly establish[es]" that plaintiffs are entitled to benefits they claim. *Demer v. IBM Corp. LTD*

20

*Plan*, 835 F.3d 893, 907 (9th Cir. 2016) (notwithstanding procedural irregularities and the administrator's abuse of discretion, "[a]n award of benefits [was] not a proper remedy because the record [did] not clearly establish that [the administrator] should necessarily have awarded [the plaintiff] benefits"); *see also M. S. v. Premera Blue Cross*, 118 F.4th 1248, 1263 (10th Cir. 2024) ("Plaintiffs cite no authority suggesting a lack of notice of claim review procedures in violation of ERISA is, without more, an injury in fact. Nor are we aware of any. Indeed, we have excused deviations from ERISA's notice requirements so long as the claimant has not been prejudiced thereby.") (cleaned up; citations omitted).

Even where the plaintiff makes a colorable showing that benefits should have been awarded, the court should remand back to the administrator, not award benefits. As the Seventh Circuit has explained, "the appropriate remedy in an ERISA case" when the administrator "fails to make adequate findings or to explain its grounds adequately is to send the case back to the [administrator] for further findings or explanation." *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996). To obtain a remand, moreover, Plaintiffs must show that an

21

award of benefits was possible, which they have not done here. *Wit v. United Behav. Health*, 79 F.4th 1068, 1084 (9th Cir. 2023) ("We have ordered remand for claim reprocessing where a plaintiff has shown that his or her claim was denied based on the wrong standard and that he or she might be entitled to benefits under the proper standard. ... We have never held that a plaintiff is entitled to reprocessing without a showing that application of the wrong standard could have prejudiced the claimant. In fact, we have declined to remand for reevaluation where it would be a 'useless formality' because the administrator's alleged error did not prejudice the claimant or it was clear that the claimant was ineligible for benefits.") (citations omitted). If Premera's decision was not contrary to the facts, the Members have no remedy for any alleged procedural irregularity.

The Members have not shown that they are clearly entitled to benefits and thus for this reason alone the district court's award of benefits was improper. To the extent the Members contend that Premera improperly relied on the InterQual Criteria, the record does not support medical necessity. *See Wit*, 79 F.4th at 1084 ("In fact, we have declined to remand for reevaluation where it would be a 'useless

22

formality' because the administrator's alleged error did not prejudice the claimant or it was clear that the claimant was ineligible for benefits.").

## VII. The Court should reverse or vacate the attorneys' fee award.

The Members do not dispute that, if this Court reverses the judgment and holds that Premera did not abuse its discretion in denying both claims, they are not entitled to attorneys' fees. If the Court only partially reverses the judgment, it should remand for the district court to determine, in the first instance, whether the Members achieved enough success on the merits to warrant the award of fees. "This court is one of 'review, not first view.'" *DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1109 (9th Cir. 2024).

## CONCLUSION

The Court should reverse the judgment and attorneys' fee award and remand for entry of judgment for Appellants.

Respectfully submitted,

/s/  Gwendolyn C. Payton

|  |  |
|---|---|
| ADAM H. CHARNES | GWENDOLYN C. PAYTON |
| KILPATRICK TOWNSEND & | JOHN NEELEMAN |
| STOCKTON LLP | KILPATRICK TOWNSEND & |
| 2001 Ross Avenue, Suite 4400 | STOCKTON LLP |
| Dallas, TX 75201 | 1420 Fifth Avenue, Suite 3700 |
| (214) 922-7106 | Seattle, WA 98101 |
| acharnes@ktslaw.com | (206) 467-9600 |
|  | gpayton@ktslaw.com |
|  | jneeleman@ktslaw.com |

*Counsel for Premera Blue Cross, Tableau Software, Inc. Employee Benefit Plan, and Salesforce.com Health and Welfare Plan*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-560 and 24-757

I am the attorney or self-represented party.

**This brief contains** | 4,596 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

( • ) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [            ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Gwendolyn C. Payton | **Date** | 11/25/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*